## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **3TAC, LLC, and** | : | |
| **WEST LOOP SOUTH, LLC,** | : | |
| | : | |
| **Plaintiffs,** | : | Index No. _____ |
| | : | |
| **- against –** | : | |
| | : | |
| **ICONIX BRAND GROUP, INC.,** | : | |
| **IP HOLDINGS UNLTD., LLC, and** | : | |
| **NEIL COLE,** | : | |
| | : | |
| **Defendants.** | : | |

## **COMPLAINT**

Plaintiffs 3TAC, LLC ("Plaintiff 3TAC") and West Loop South, LLC ("Plaintiff West Loop") (together, "Plaintiffs"), by and through their undersigned counsel, hereby asserts causes of action against Defendants Iconix Brand Group, Inc. ("Defendant Iconix"), IP Holdings Unltd., LLC ("Defendant IPHU") and Neil Cole ("Defendant Cole") (collectively, "Defendants") as follows:

## **Introduction**

1.      This litigation arises from (a) Plaintiff 3TAC having paid millions of dollars to Defendant IPHU (a subsidiary of Defendant Iconix for which Defendant Cole served as Chief Executive Officer) in exchange for Defendants having extended the term of a written license agreement pursuant to which Plaintiff 3TAC received the right to use and sublicense use of certain trademarks on and in connection with sale of apparel products for an extended period through and including September 30, 2015; and (b) Defendants having acted in bad faith and with malice by accepting that multi-million dollar payment only to then knowingly and intentionally impair the value of Plaintiff 3TAC's license, and Plaintiff 3TAC's associated

sublicense to Plaintiff West Loop, by making materially false representations to third-parties (including to Plaintiff West Loop's customers) which falsely indicated that Plaintiffs' licenses had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension.

2.       By this litigation, Plaintiffs seek millions of dollars in compensatory, punitive and other damages from Defendants based on claims for breach of contract, unjust enrichment, tortious interference with existing contracts, tortious interference with prospective business relations, trade libel and prima facie tort.

## **Parties**

3.       Plaintiff 3TAC is a limited liability company formed under the laws of the State of New Jersey, with its principal place of business in New Jersey.

4.       Plaintiff West Loop is a limited liability company formed under the laws of the State of Texas, with its principal place of business at 6300 West Loop S., Suite 100, Bellaire, TX 77401.

5.       Plaintiff 3TAC and Plaintiff West Loop are affiliated entities.

6.       Upon information and belief, Defendant Iconix is a corporation formed under the laws of the State of Delaware, with its principal place of business at 1450 Broadway, New York, NY 10018.

7.       Upon information and belief, Defendant IPHU is a limited liability company formed under the laws of the State of Delaware, with its principal place of business at 1450 Broadway, New York, NY 10018.

8.       Defendant IPHU and Defendant Iconix are affiliated entities.  More particularly, at all relevant times, Defendant IPHU has been a subsidiary of Defendant Iconix.

9.      Defendant Cole is an individual who, upon information and belief, resides in New York State and had a last known business address c/o Defendant Iconix at 1450 Broadway, New York, NY 10018.   At all relevant times through his resignation from Defendant Iconix in or about August 2015, Defendant Cole served as Chief Executive Officer, President and Chairman of Defendant Iconix, and as a Board Member of Defendant IPHU.

## Jurisdiction and Venue

10.     Jurisdiction over this matter is based upon 28 U.S.C. § 1332(a)(2) as the claims made herein exceed the sum of $75,000, exclusive of interest and costs, and are between citizens of different States.

11.     Venue in this Court is proper under 28 U.S.C. § 1391, including because this is the judicial district in which Defendants reside.

## Facts

A.  The Global License Agreement.

12.     Plaintiff 3TAC and Defendant IPHU were parties to a written Global License Agreement dated as of October 30, 2009, as amended by a First Amendment to Global License Agreement dated as of November 1, 2010, a Second Amendment to Global License Agreement dated as of July 27, 2011, a Third Amendment to Global License Agreement dated as of September 30, 2011, and a Fourth Amendment to Global License Agreement dated as of May 17, 2013 (the "Fourth Amendment"); (all the foregoing, collectively, the "Global License Agreement").

13.     Pursuant to the Global License Agreement, Defendant IPHU granted to Plaintiff 3TAC a license to use and sublicense use of certain intellectual property rights (including

without limitation the ECKO UNLTD. and MARC ECKO fashion brands) throughout the United States of America and much of the world on and in connection with design, manufacture, distribution, sale and/or promotion of certain apparel and other products.

14.     On May 17, 2013, Plaintiff 3TAC and Defendant IPHU entered into the Fourth Amendment to the Global License Agreement, pursuant to which, among other things, (a) Plaintiff 3TAC paid Nineteen Million Dollars ($19,000,000) to Defendant IPHU (the "$19 Million Dollar Payment"); and (b) the term of the Global License Agreement was extended through and including December 31, 2014, with an additional nine (9) month sell-off period extending from January 1, 2015 through September 30, 2015.

15.     Section 7.A of the Fourth Amendment provided that the $19 Million Payment paid by Plaintiff 3TAC to Defendant IPHU was comprised of the following components: (a) Eight Million Dollars ($8,000,000) covering an agreed upon payment in full for payments then owed by Plaintiff 3TAC arising from and/or otherwise relating to any and all sales by Plaintiff 3TAC and/or its affiliates under the Global License Agreement from inception through and including the date of entry into the Fourth Amendment; (b) Six Million Dollars ($6,000,000) covering a flat-fee payment in full for any and all royalties then or at any later time owed by Plaintiff 3TAC and/or its affiliates with respect to sales made under the Global License Agreement for the period of time from the date of entry into the Fourth Amendment through and including December 31, 2013; and (c) Five Million Dollars ($5,000,000) covering a pre-paid advance against royalties that would later be payable by Plaintiff 3TAC to Defendant IPHU arising from sales made under the Global License Agreement (and/or associated sell-off period) for the period of time from January 1, 2014 through September 30, 2015.

16.     The Fourth Amendment was negotiated by Defendant Iconix, including through

Defendant Cole, on behalf of Defendant IPHU.

17.     Plaintiff 3TAC would not have made the $19 Million Payment to Defendant

IPHU (as provided for by the Fourth Amendment) had Plaintiff 3TAC not received from

Defendant IPHU a corresponding agreement to extend the term of the Global License Agreement

through and including December 31, 2014, with an additional nine (9) month sell-off period

extending from January 1, 2015 through September 30, 2015 (as provided for by the Fourth

Amendment).

18.     The Defendants benefited from Plaintiff 3TAC's payment of the $19 Million

Payment.

**B.  The West Loop Sublicense.**

19.     Section 1.5 of the Global License Agreement expressly permitted Plaintiff 3TAC

(defined in the Global License Agreement, as "Licensee") to sublicense its rights under the

Global License Agreement to any of Plaintiff 3TAC's Affiliates (as such term was defined in the

Global License Agreement), on the following terms and conditions:

> "1.5  Licensee shall be permitted to sublicense (i) all or any portion
> of the rights granted hereunder to any of Licensee's Affiliates so
> long as Licensee and any such Affiliate first enter into an Affiliate
> Sublicense Agreement. . . .  No authorized sublicense shall release
> Licensee from any of its obligations hereunder.  Additionally, if
> and to the extent Licensee sublicenses any rights to any of
> Affiliate(s) of Licensee, then (a) Licensee and such Affiliate(s)
> shall be jointly and severally liable for all obligations arising from
> such sublicense; and (b) all payment and reporting obligations
> required hereunder shall be undertaken by Licensee on behalf of
> itself and all such Affiliates to which it granted sublicenses."

20.     Plaintiff 3TAC and Plaintiff West Loop are "Affiliates" within the definition of

the Global License Agreement.

21.     Plaintiff 3TAC and Plaintiff West Loop entered into a written sublicense

agreement dated as of April 1, 2014 (the "West Loop Sublicense"), pursuant to which Plaintiff 3TAC granted to Plaintiff West Loop a non-exclusive sublicense of Plaintiff 3TAC's rights under the Global License Agreement for a term that was coterminous with the Global License Agreement.

22.     Pursuant to the Global License Agreement (including without limitation its Fourth Amendment) and the West Loop Sublicense, Plaintiffs received the rights from Defendant IPHU to design, manufacture, distribute, sell and promote apparel products bearing the ECKO UNLTD. and/or MARC ECKO trademarks throughout the United States from May 17, 2013 through and including December 31, 2014, with an additional nine (9) month sell-off period extending from January 1, 2015 through September 30, 2015.

C.   Defendants' Misrepresentations.

23.     At multiple times between May 17, 2013 and December 31, 2014 (during the term of the Global License Agreement), Defendants made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the Fourth Amendment to the Global License Agreement.

24.     Defendants made (and/or caused to be made) such misrepresentations knowingly, intentionally, in bad faith and with malice.

25.     As a direct and proximate result of Defendants' misrepresentations, Plaintiffs lost sales, revenues and profits.

26.     As a direct and proximate result of Defendants' misrepresentations, Plaintiffs did

not receive the full benefit of Plaintiff 3TAC's $19 Million Payment.

## COUNT I
### (Breach of Contract – Plaintiff 3TAC)

27.     Plaintiff 3TAC re-alleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-26 above.

28.     Plaintiff 3TAC and Defendant IPHU were parties to the Global License Agreement.

29.     Plaintiff 3TAC performed its obligations under the Global License Agreement.

30.     Defendant IPHU failed to perform its obligations under the Global License Agreement, including by having made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the Fourth Amendment to the Global License Agreement.

31.     Defendant IPHU breached the implied covenant of good faith and fair dealing in the Global License Agreement, including by having made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the Fourth Amendment to the Global License Agreement.

32.     As a direct and proximate result of Defendant IPHU's breaches, Plaintiff 3TAC

sustained damages, including without limitation through lost revenues and profits and having failed to receive the full benefit of Plaintiff 3TAC's $19 Million Payment.

COUNT II
(Breach of Contract – Plaintiff West Loop)

33.     Plaintiff West Loop re-alleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-26 above.

34.     Plaintiff 3TAC and Defendant IPHU were parties to the Global License Agreement.

35.     Plaintiff 3TAC and Plaintiff West Loop were parties to the West Loop Sublicense, pursuant to which Plaintiff 3TAC granted to Plaintiff West Loop a non-exclusive sublicense of Plaintiff 3TAC's rights under the Global License Agreement for a term that was coterminous with the Global License Agreement.

36.     Plaintiff West Loop was an intended third-party beneficiary under the Global License Agreement.

37.     Plaintiff 3TAC performed its obligations under the Global License Agreement.

38.     Plaintiff West Loop performed its obligations under the West Loop Sublicense.

39.     Defendant IPHU failed to perform its obligations under the Global License Agreement, including by having made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the Fourth Amendment to the Global License Agreement.

8

40.     Defendant IPHU breached the implied covenant of good faith and fair dealing in the Global License Agreement, including by having made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the Fourth Amendment to the Global License Agreement.

41.     As a direct and proximate result of Defendant IPHU's breaches, Plaintiff West Loop sustained damages, including without limitation through lost revenues and profits and having failed to receive the full benefit of the $19 Million Payment.

## COUNT III
### (Unjust Enrichment – Plaintiff 3TAC)

42.     Plaintiff 3TAC re-alleges and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-26 above.

43.     Defendants were enriched at the expense of Plaintiff 3TAC by virtue of Plaintiff 3TAC having made the $19 Million Payment.

44.     It is against equity and good conscience to permit Defendants to retain the $19 Million Payment and/or any other benefits arising in connection therewith.

## COUNT IV
### (Tortious Interference With The West Loop Sublicense)

45.     Plaintiffs re-allege and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1-26 above.

46.     Plaintiff 3TAC and Defendant IPHU were parties to the Global License

Agreement.

47.     Plaintiff 3TAC and Plaintiff West Loop were parties to the West Loop

Sublicense, pursuant to which Plaintiff 3TAC granted to Plaintiff West Loop a non-exclusive

sublicense of Plaintiff 3TAC's rights under the Global License Agreement for a term that was

coterminous with the Global License Agreement.

48.     Plaintiff West Loop was an intended third-party beneficiary under the Global

License Agreement.

49.     Defendants had knowledge of Plaintiffs having entered into the West Loop

Sublicense.

50.     Defendants knowingly, and without justification, made (and/or caused to be

made) materially false representations to Plaintiffs' customers and/or prospective customers

(including without limitation Burlington, Dillard's and Stage) which falsely indicated that

Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been

in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the

Fourth Amendment to the Global License Agreement.

51.     Defendants made (and/or caused to be made) such false representations for

purposes of interfering with the West Loop Sublicense.

52.     As a direct and proximate result of Defendants' interference with the West Loop

Sublicense, Plaintiffs sustained millions of dollars of damages.


COUNT V
<u>(Tortious Interference With Existing and Prospective Customer Relations)</u>

53.     Plaintiff West Loop re-alleges and incorporates by reference, as if fully set forth

herein, the allegations contained in paragraphs 1-26 above.

54.     There existed valid contracts and/or prospective contracts between Plaintiff West Loop and its customers, including without limitation Burlington, Dillard's and Stage.

55.     Defendants had knowledge of such contracts and/or prospective contracts.

56.     Defendants knowingly, and without justification, made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the Fourth Amendment to the Global License Agreement.

57.     Defendants made (and/or caused to be made) such false representations for purposes of interfering with the contracts and/or prospective contracts between Plaintiff West Loop and its customers, including without limitation Burlington, Dillard's and Stage.

58.     As a direct and proximate result of Defendants' interference with actual and prospective contractual relations, Plaintiffs sustained substantial damages.

COUNT VI
(Trade Libel)

59.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations contained in paragraphs 1-26 above.

60.     Defendants knowingly, and without justification, made (and/or caused to be made) materially false representations to Plaintiffs' customers and/or prospective customers (including without limitation Burlington, Dillard's and Stage) which falsely indicated that Plaintiffs' rights under the Global License Agreement had terminated when they in fact had been in full force and effect by way of an agreed-upon and fully-paid for extension embodied in the

Fourth Amendment to the Global License Agreement.

61.     Defendants made (and/or caused to be made) such misrepresentations knowingly, intentionally, in bad faith and with malice.

62.     Plaintiffs suffered special damages as a natural and immediate consequence of Defendants' false representations.

COUNT VII
(Prima Facie Tort)

63.     Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations contained in paragraphs 1-26 above.

64.     By their misrepresentations, Defendants intentionally inflicted harm upon Plaintiffs by one or more acts that would otherwise be lawful.

65.     Defendants inflicted such harm without excuse or justification and motivated solely by malice.

66.     Defendants' conduct resulted in Plaintiffs suffering special damages.

WHEREFORE, Plaintiffs demand judgment in their favor, awarding them:

  a.   compensatory damages (including without limitation recovery of the $19 Million Payment);

  b.   consequential damages;

  c.   special damages;

  d.   punitive damages;

  e.   costs of suit;

  f.   interest;

  g.   attorneys' fees; and

  h.   such other and further relief as the Court deems just and proper.

Dated:  November 14, 2016

By:

Gregg Donnenfeld,Esq.
DONNENFELD LAW PLLC
P.O. Box 280
Greenvale, NY 11548
917-251-2452
Gregg@DonnenfeldLaw.com
*Attorney for Plaintiffs*