Harris N. Cogan
Andrew T. Hambelton
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 885-5000
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
3TAC, LLC, and WEST LOOP SOUTH, LLC

                Plaintiffs,

    -against-

ICONIX BRAND GROUP, INC., IP HOLDINGS
UNLTD, LLC and NEIL COLE

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 16-cv-08795-LTS-JCF


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 1

    I.    3TAC FAILS TO STATE A CLAIM FOR BREACH OF THE MEE LICENSE AGREEMENT AGAINST IPHU ................................................................................ 1

    II.    WEST LOOP FAILS TO STATE A CLAIM FOR BREACH OF THE MEE LICENSE AGREEMENT AGAINST IPHU ...................................................................... 2

    III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT ....... 4

    IV.    WEST LOOP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH THE WEST LOOP SUBLICENSE .............................. 5

    V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CUSTOMERS ................................................................. 6

    VI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR TRADE LIBEL ....................... 7

    VII.    PLAINTIFFS FAIL TO STATE A CLAIM FOR UNFAIR COMPETITION AGAINST IPHU ................................................................................................. 9

    VIII.    PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIMA FACIE TORT ............ 9

    IX.    PLAINTIFFS' TORT CLAIMS AGAINST COLE SHOULD BE DISMISSED 10

CONCLUSION ............................................................................................................................... 11

**INTRODUCTION**

Despite having now filed their third complaint, two of which were filed in response to arguments raised by Defendants challenging the sufficiency of earlier filed versions, Plaintiffs' Second Amended Complaint still fails to state a claim against Defendants, and Plaintiffs' arguments in opposition to the instant motion to dismiss are unavailing. Plaintiffs' claims are all premised on the baseless allegation that Defendants allegedly misrepresented to certain (but not all) of Plaintiffs' customers that the MEE License Agreement was terminated when it was not. Relying on conclusory and unsupported allegations, Plaintiffs try to contort Defendants' alleged false statement so as to meet the pleading requirements of numerous breach of contract and tort claims. Plaintiffs' attempted acrobatics, however, are misguided and, as set forth in Defendants' moving brief and below, each of the claims as plead by Plaintiffs fails as a matter of law.

**ARGUMENT**

**I.   3TAC FAILS TO STATE A CLAIM FOR BREACH OF THE MEE LICENSE AGREEMENT**

Plaintiffs' attempt to convert Defendants' alleged false statement into a breach of IPHU's obligations under the MEE License Agreement is misplaced. As noted in Defendants' moving brief—and ignored by Plaintiffs in their opposition—there are no allegations in the Second Amended Complaint that IPHU terminated the MEE License Agreement in breach of its obligation to grant 3TAC the right to exploit the Mark Ecko brands in Section 1.1(a) or failed to allow 3TAC to sublicense the rights granted to it in violation of Section 1.5. Plaintiffs' argument that Defendants' alleged misrepresentation "effectively nullified" 3TAC's rights under the MEE License Agreement, does not amount to a breach of any express provision of the Agreement.[1]

---

[1] Even if Plaintiffs' claim that the MEE License Agreement was effectively nullified by Defendants' actions were sufficient to state a claim for breach of an express provision of the Agreement (which it is not), 3TAC's claim still fails because Plaintiffs do not allege that the purported misrepresentation was made to all of Plaintiffs' customers. In

In addition to failing to state a breach of any express provision in the MEE License Agreement, 3TAC's claim fails because Plaintiffs admit that 3TAC did not suffer any damages as a result of Defendants' alleged false statement. (Opp. Br. at 13 ("Since West Loop (rather than 3TAC) was the operating entity that suffered lost sales due to Defendants' license-negating false statements, only West Loop could recover those damages.").) This eviscerates 3TAC's breach of contract claim against IPHU. *See Doyle v. MasterCard Int'l, Inc.*, 2016 U.S. Dist. LEXIS 173619, at *5 (S.D.N.Y. Dec. 15, 2016) (LTS) (dismissing breach of contract claim because there were no allegations that plaintiff suffered any cognizable damages).

At bottom, Plaintiffs complain that Defendants' alleged misrepresentation constitutes a breach of the implied covenant of good faith and fair dealing (which Plaintiffs do not plead as a separate cause of action) because it prevented them from receiving the fruits of their bargain. (*See* Opp. Br. at 6-8.) Defendants concede that such a claim by 3TAC is sufficiently stated. But in no event can Plaintiffs' allegations support a claim for breach of any express provision of the MEE License Agreement.[2]

## II. WEST LOOP FAILS TO STATE A CLAIM FOR BREACH OF THE MEE LICENSE AGREEMENT

West Loop is not an intended third party beneficiary of the MEE License Agreement, but, at best, an incidental beneficiary, and as such does not have a right to enforce the MEE License Agreement against IPHU. *See Polesuk v. CBR Sys.*, 2006 U.S. Dist. LEXIS 71098, at *48-49 (S.D.N.Y. Sept. 28, 2006) ("Under New York law, only an intended, rather than an incidental, beneficiary of a contract can assert a third-party beneficiary claim thereunder"). "An incidental

---

order for Defendants' alleged false statement to have nullified all of 3TAC's rights under the MEE License Agreement, the false statement would necessarily had to have been made to ***all*** of Plaintiffs' customers. There is no such allegation.
[2] If 3TAC's claim for breach of the MEE License Agreement survives, then, in that instance, Plaintiffs' implied covenant claim is duplicative because it is based on the same facts. *See Doyle*, 2016 U.S. Dist. LEXIS 173619, at *5.

2

beneficiary is a third party that may derive a benefit from the performance of a contract though that party is neither the promisee nor the one to whom performance is to be rendered." *Id*.

Contrary to Plaintiffs' argument, while a third party need not be specifically named in a contract to be an intended third party beneficiary, "the parties' intention to benefit the third party must appear from the four corners of the instrument." *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 263-264 (S.D.N.Y. Nov. 20, 2006); *Bellis v. Tokio Marine & Fire Ins. Co.*, 2004 U.S. Dist. LEXIS 13885, at *12-13 (S.D.N.Y. July 15, 2004) ("absent clear contractual language evincing" an intent to confer third party beneficiary status, New York courts "are clearly reluctant to interpret circumstances to construe such intent to confer contractual rights on unnamed third parties."). Here, there is no provision in the MEE License Agreement that suggests that West Loop (or any 3TAC affiliate) was to be an intended third party beneficiary. At best, the provisions of the Agreement that Plaintiffs cite in the Second Amended Complaint, i.e., provisions such as the right to select Retail Channels and set prices, only set the parameters for limited rights 3TAC had the right to confer to its unnamed affiliates consistent with their expected role as sublicensees of 3TAC.

Moreover, Plaintiffs' argument that West Loop is an intended third party beneficiary is foreclosed by the fact that it is not the only party that could enforce a breach of the MEE License Agreement. *See Zaretsky v. William Goldberg Diamond Corp.*, 2014 U.S. Dist. LEXIS 114636, at *6 (S.D.N.Y. Aug. 18, 2014) ("a third-party is an intended beneficiary *only if* no one other than the third-party can recover if the promisor breaches the contract or the contract language should otherwise clearly evidence an intent to permit enforcement by the third-party."); *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 U.S. Dist. LEXIS 94896, at *8 (S.D.N.Y. July 21, 2015) (same). Plaintiffs' argument that only West Loop could recover damages for a breach of the MEE

3

License Agreement is contradicted by the fact that 3TAC and West Loop are seeking the identical relief for claimed breaches of the MEE License Agreement. Moreover, nowhere in the MEE License Agreement is West Loop given a right to enforce the Agreement. To the contrary, the provisions concerning, *inter alia*, termination, consent to jurisdiction and venue in the event of a dispute and jury waiver only mention 3TAC and do not mention West Loop or any other 3TAC affiliate. Surely the parties could have included 3TAC's affiliates in those provisions had their intention been to allow them to enforce the MEE License Agreement. But, as Plaintiffs allege in the Second Amended Complaint, the whole purpose behind the MEE License Agreement was to ease administrative burdens. It makes no sense that the parties would consolidate all of the potential sublicensees' obligations in 3TAC (such as payment and reporting obligations), but allow each of the potential sublicensees to retain a direct right enforce the MEE License Agreement.

Because West Loop was, at best, only an incidental beneficiary of the MEE License Agreement, it has no standing to bring a breach of contract claim against IPHU.

### III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs acknowledge that this claim is plead in the alternative in the event that this Court finds that there was no breach of the MEE License Agreement. But even in that event, Plaintiffs' claim still fails.

First, as against Iconix and Cole, there are no allegations of any specific unjust benefits received by either. Rather, Plaintiffs conflate Defendants and allege that "Defendants" received unjust benefits. But neither Iconix nor Cole are the owners of the Mark Ecko brands or parties to the Fourth Amendment from which the alleged unjust benefits flowed and, thus, did not receive any alleged benefits.[3] Relying entirely on conjecture, Plaintiffs argue that it can be inferred that

---

[3] The alleged unjust benefits received are: (1) the $19 million that 3TAC paid to IPHU pursuant to the Fourth Amendment, (2) revenues derived from Plaintiffs investment in and goodwill associated with the Mark Ecko brands,

because IPHU is a subsidiary of Iconix and that Cole was the former CEO and "presumably a large shareholder" that they benefitted from the unjust benefits that IPHU purportedly received. (Opp. Br. at 16-17.) But such a conclusory argument, which is not even specifically plead in the Second Amended Complaint, is insufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, ***but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.***" (emphasis added)). In essence, Plaintiffs' claim is that because a company's subsidiary may have received some unjust benefit, that the parent company, the company's officers and shareholders are equally liable. This makes no sense, and disregards the law respecting the corporate form. *Cobalt Partners, L.P. v. GSC Capital Corp.*, 97 A.D.3d 35, 40 (1st Dep't 2012) ("New York law disfavors disregard of the corporate form").

Second, with respect to the unjust enrichment claim against IPHU, even if the breach of the MEE License Agreement claim is dismissed, IPHU's rights and obligations, including the alleged unjust benefits it received, are still governed by the MEE License Agreement and the Fourth Amendment and thus Plaintiffs' unjust enrichment claim must be dismissed. *See, e.g., Tahari v. Rosen*, 2007 N.Y. Misc. LEXIS 9160, at *22 (Sup. Ct. N.Y. County June 18, 2007) (dismissing unjust enrichment claim because claim that defendant unjustly profited from the sale of securities after an IPO was governed by an underwriting contract).

### IV.   WEST LOOP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH THE WEST LOOP SUBLICENSE

Plaintiffs also acknowledge that this claim is an alternative claim in the event that the Court

---

which specifically inure to the benefit of IPHU pursuant to Section 8.1 of the MEE License Agreement, and (3) a diversion of sales from Plaintiffs to IPHU and/or its other licensees, which, under all circumstances, IPHU was permitted to do following the Fourth Amendment that removed 3TAC's exclusivity with respect to the Mark Ecko brands. (SAC ¶112.)

finds that Plaintiffs have not sufficiently alleged that West Loop is an intended third party beneficiary under the MEE License Agreement. (Opp. Br. at 18.) But even plead as an alternative theory, West Loop's claim still fails. Plaintiffs' argument—unsupported by a citation to any authority—is that West Loop's tortious interference claim is sufficiently plead because Defendants' alleged misrepresentation resulted in 3TAC not being able to perform under its sublicense with West Loop. But even assuming, *arguendo*, that Defendants made the alleged misrepresentation, 3TAC was still fully able to perform under its sublicense with West Loop because it still had the right to sublicense the rights to the Mark Ecko brands to West Loop. That the rights 3TAC had to license may have been of lesser value because of Defendants' alleged actions to drive business away from Plaintiffs, does not mean that 3TAC did not have the rights to the Mark Ecko brands to sublicense to West Loop.

## V. PLAINTIFFS FAIL TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE CUSTOMERS

Initially, Plaintiffs argue in a footnote that 3TAC has sufficiently stated a claim for tortious interference with prospective business relations because Defendants' alleged false statements interfered with its relationship with West Loop. But because there was a contract between 3TAC and West Loop, there cannot be a claim for interference with prospective business relations. Moreover, Plaintiffs' argument is unsupported by any allegations in the Second Amended Complaint. For example, there are no allegations that 3TAC's business was harmed by the interruption of revenue flowing from West Loop as a result of Defendants' actions, as Plaintiffs' claim in their opposition. (Opp. Br. at 18.)

With respect to West Loop's claim, Plaintiffs have failed to allege that Defendants' actions were motivated solely by malice. To the contrary, Plaintiffs' allegations show that Defendants' actions were motivated, at least in part, by their own economic interest, including, *inter alia*, to

6

secure for IPHU complete ownership of the Mark Ecko brands.  Plaintiffs would have this Court ignore the allegations in its Second Amended Complaint about Defendants' economic motives and focus instead only on the allegations of malice.  But, because the relevant inquiry is whether Defendants' conduct was motivated *solely* by malice, it is immaterial if Plaintiffs allege that Defendants' conduct was also partially motivated by malice.  Plaintiffs' acknowledgement that a part of Defendants' motivation was IPHU's own economic interest is fatal to its claim.  See *RSM Prod. Corp. v. Friedman*, 643 F. Supp. 2d 382, 412 (S.D.N.Y. 2009).  Similarly, Plaintiffs' argument that Defendants utilized improper means is without merit because Defendants' conduct was at least partially motivated by IPHU's economic interest.  See *Enzo Biochem, Inc. v. Molecular Probes, Inc.*, 2013 U.S. Dist. LEXIS 183608, at *14 (S.D.N.Y. Dec. 6, 2013) (there can be no "malice *or improper means* where a defendant has a legitimate economic self-interest in its putatively interfering conduct") (emphasis added).

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR TRADE LIBEL

Plaintiffs argue that their trade libel claim is timely because the applicable limitations period is the longer three-year statute of limitations for trade libel claims alleging economic injury—as opposed to a claim alleging only reputational harm.  But Plaintiffs' claim is really a claim for injury to reputation, which is governed by a one-year limitations period.  See *Morrison v. Nat'l Broadcasting Co.*, 19 N.Y. 2d 453, 459 (1967) ("In applying a Statute of Limitations, this court declared some years ago, [w]e look for the reality, and the essence of the action and not its mere name."); CPLR 215(3) ("action to recover damages for…libel").  Indeed, the crux of Plaintiffs' trade libel claim is that Defendants' alleged misrepresentation was "derogatory to Plaintiffs' business and properties."  (SAC ¶140 ("Defendants' false statements created the "false and injurious implications that…[Plaintiffs'] entire line of products were unauthorized, inauthentic and/or infringing.""); *see* Opp. Br. at 21.)  Plaintiffs' argument would have this Court extend a

7

three-year statute of limitations to any libel claim alleging loss of business as a result of reputational harm.  Such an expansive interpretation is not warranted.

Plaintiffs also argue that their trade libel claim is adequately plead because Defendants' alleged conduct tends to disparage or negatively reflect on Plaintiffs' products and rights to the Mark Ecko brands.  Plaintiffs cannot have it both ways.  Plaintiffs cannot argue that their trade libel claim should be considered as only asserting economic harm to get the benefit of the longer statute of limitations period, but then argue that Defendants' actions have harmed their reputation so as to show that they have sufficiently stated a trade libel claim.  Either Plaintiffs' claim is untimely because it is one seeking special damages in the form of lost business as a result of reputational harm, or the claim fails to state a cause of action because it does not allege that Defendants' disparaged or negatively reflected upon the condition, value or quality of a product or property.  *See Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (internal citation omitted) ("trade libel is based on statements confined to denigrating the quality of a business' services or products").

In addition, Plaintiffs allege that they suffered "economic and other special damages…including without limitation special damages believed to include…lost revenue…by virtue of [their customers]…having failed to place purchase orders with Plaintiffs.  (SAC ¶144.)  Although loss of business can be a type of special damages recoverable for a libel claim for injury to reputation, it is only properly plead, which it is not in the Second Amended Complaint, if there is an itemized account of customers and losses because "[r]ound figures, general allegations of a dollar amount or boilerplate allegations of some impairment to business reputation are insufficient." *Microlan Sys. v. Omnitech Corp. Solutions*, 1999 U.S. Dist. LEXIS 17599, at *4-5

(S.D.N.Y. Nov. 12, 1999) (internal citations omitted); *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 51 (S.D.N.Y. 2015) (same).

## VII. PLAINTIFFS FAIL TO STATE A CLAIM FOR UNFAIR COMPETITION

Plaintiffs argue that their unfair competition claim is properly plead because they allege that Defendants' misappropriated their "intellectual property and contract rights." (Opp. Br. at 22.) But this makes no sense. IPHU is the owner of the Mark Ecko brands and Plaintiffs' right to use the brands was non-exclusive. Thus, Plaintiffs did not own anything that Defendants allegedly could have misappropriated.

## VIII. PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIMA FACIE TORT

As noted, the essence of Plaintiffs' Second Amended Complaint is that, as a result of Defendants' alleged actions, Plaintiffs' reputation was harmed and that caused a loss of business. Plaintiffs' claim for prima facie tort is nothing more than an untimely defamation claim, which Plaintiffs attempt to fashion "under some other rubric…to avail [themselves] of the longer limitations period." *Havell v. Islam*, 292 A.D.2d 210 (1st Dep't 2002) (affirming dismissal of prima facie tort claim as barred by the one-year limitations period because "a claim for damages for an intentional tort, including a tort not specifically listed in CPLR 215(3), is subject to a one-year limitations period" and, therefore, where "a reading of the factual allegations discloses that the essence of the cause of action is an intentional tort, plaintiff cannot avoid a statute of limitations bar by labeling the action as one to recover damages for a prima facie tort."). Accordingly, the one-year limitation period should apply.

Plaintiffs also ignore two arguments raised by Defendants warranting dismissal of this claim: (1) a prima facie tort claim cannot lie where the factual underpinning of the claim is the libelous dissemination of information, *see McKenzie v. Dow Jones & Co.,* 355 Fed. App'x 533, 536 (2d Cir. 2009); and (2) Defendants' alleged conduct was not motivated solely by malice, but,

9

in part, by their own economic interests.  And, similar to Plaintiffs' trade libel claim, this claim also should be dismissed for failing to adequately allege special damages.

### IX.   PLAINTIFFS' TORT CLAIMS AGAINST COLE SHOULD BE DISMISSED

First, Plaintiffs are unable to identify any actual factual allegations against Cole.  Instead, they rely on vague, unsupported and conclusory assertions that Cole had a "personal hatred" of and employed a "personal vendetta against" Seth Gerszberg (SAC ¶49), and that he "caused" certain "materially false representations to be made" by Iconix or IPHU (*id.* ¶73).  Such allegations do not come close to satisfying the Plaintiffs' pleading requirements.[4]  Nor does the law excuse Plaintiffs' failure to advance actual factual allegations against Cole simply because Plaintiffs hope to "flesh[] out in discovery" the "details" of their (non-existent) claim against Cole.  *See Ashcroft*, 556 U.S. at 678–79.

Second, Plaintiffs do not dispute that Cole's alleged involvement is limited to allegations that he directed Iconix and/or IPHU to make certain alleged misrepresentations.  Because the claims against Iconix and IPHU fail, they must be dismissed against Cole as well.

Third, the cases cited by Plaintiffs miss the mark.  Those cases stand for the unremarkable proposition that in certain circumstances, a corporate officer can be held liable in his or her

---

[4] *See, e.g.*, *Burrowes* v. *Combs*, 25 A.D.3d 370, 373 (1st Dep't 2006) ("to avoid dismissal of a tortious interference with contract claim a plaintiff must support his [or her] claim with more than mere speculation"); *Medtech Prod. Inc.* v. *Ranir, LLC*, 596 F. Supp. 2d 778, 815 (S.D.N.Y. 2008) (a plaintiff must allege "more culpable conduct on the part of the defendant" to sustain a claim for tortious interference with prospective business relationships than for a claim for tortious interference with contractual relations); *Tagliaferri* v. *Szulik*, 2015 WL 5918204, at *4 (S.D.N.Y. Oct. 9, 2015) (holding that in an action for libel or slander, a plaintiff must identify "the particular words complained of . . . in the complaint" and also "must allege the time, place and manner of the false statement and . . . specify to whom it was made"); *Winderbaum* v. *Winderbaum*, 39 Misc. 2d 478, 479-80 (Sup. Ct. N.Y. County 1963) ("To plead a [prima facie tort], the complaint must: state material facts, not merely conclusions, in concise form; separately state the allegations referable to this cause; and allege special damages which are alone recoverable for such prima facie tort); *Am. Fin. Int'l Grp.-Asia, L.L.C.* v. *Bennett*, 2007 WL 1732427, at *4 (S.D.N.Y. June 14, 2007) (dismissing unfair competition claim that was " so vague that it [was] difficult to say what behavior they [were] based on.")

individual capacity for fraudulent or tortious acts committed in the course of their duties on behalf of the corporation. That is not what is at issue here.

## CONCLUSION

Plaintiffs' Second Amended Complaint should be dismissed in its entirety with prejudice.

Dated: July 19, 2017　　　　　　　　　　BLANK ROME LLP

　　　　　　　　　　　　　　　　　　　　By: */s/ Harris N. Cogan*
　　　　　　　　　　　　　　　　　　　　　　Harris N. Cogan
　　　　　　　　　　　　　　　　　　　　　　Andrew T. Hambelton
　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*